**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                    No. CR-2006-1797 MV

ROBERT ABDUL BAINES ET AL.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter came before the court on Defendant Robert Abdul Baines's Motion for Pretrial Hearing to Determine the Admissibility of Alleged Co-Conspirators' Statements [Doc. No. 27] filed September 7, 2006 and the United States' Response to the Motion of Defendant Baines for *James* Hearing [Doc. No. 31] filed September 20, 2006.  The court, having considered the motion and response, issued an Order Granting Defendant's Motion for Pretrial Hearing to Determine Admissibility of Alleged Co-Conspirators' Statements and to File Supplemental Brief [Doc. No. 43] on October 3, 2006.  Pursuant to that order, the government filed United States' Supplemental Brief Regarding *James* Hearing [Doc. No. 51] on October 18, 2006, and United States' Supplement to Supplemental Brief Regarding *James* Hearing [Doc. No. 58] on October 31, 2006.  On November 6, 2006, this court conducted a *James* hearing to determine the admissibility of the three alleged co-conspirator statements at issue.  After having considered the motion, briefs, evidence and relevant law, and being otherwise fully informed, the court advised the parties on December 11, 2006, that Co-defendant Fuller's and Co-defendant Johnson's out-of-court statements to Agent Meza are not admissible pursuant to *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).  The court further advised the parties that Co-conspirator "Felix's" out-of-court statement

to Co-defendant Campbell is admissible pursuant to Fed. R. Evid. 801(d)(2)(E).  This Memorandum

Opinion sets forth the bases for the court's decision.

## I.     BACKGROUND

On July 22, 2006, Co-defendant Sharisse Fuller ("Fuller") drove a rented Ford automobile

bearing Pennsylvania license plates into the Interstate 25 Checkpoint in Dona Ana County.  Co-

defendant Jonna Campbell ("Campbell") was a passenger in Fuller's automobile.  Immediately behind

Fuller and Campbell in a Pontiac minivan, also bearing Pennsylvania license plates, were Defendant

Baines ("Defendant"), Co-defendant Hassan Bayah Johnson ("Johnson") and another individual

named Ronnie Price ("Price").

Border Patrol Agent Jose Meza stopped Fuller, who appeared surprised to see him.  Agent

Meza questioned Fuller and Campbell about their citizenship and travel plans.  Fuller and Campbell

both claimed U.S. citizenship.  Fuller told Agent Meza that they were coming from the Grand Canyon

and were heading home to Pennsylvania.  Finding Fuller's response odd, Agent Meza asked Fuller

why they were traveling on Interstate 25 since the Grand Canyon was north of their location.  Fuller,

seeming surprised, paused and then responded in a stutter that they were just coming from Arizona.

Agent Meza then received permission from Fuller to search the trunk of the car.  Upon

opening the trunk, Agent Meza detected the odor of marijuana.  When he closed the trunk, he noticed

the next vehicle in line for inspection, parked some distance behind Fuller's vehicle, also had

Pennsylvania plates.  Agent Meza then asked Fuller if she was traveling with the vehicle behind her.

Fuller responded "yes, we're friends."  (*James* Hrg. Tr. at 38.)  Agent Meza obtained consent from

Fuller to conduct a canine inspection of the vehicle and sent her to secondary inspection.

Agent Meza then spoke with the passengers in the minivan.  Johnson was driving.  Agent

273b0b97c8748bec

Meza asked the passengers about their citizenship. Initially, Johnson did not respond, but instead acted as if they were lost and asked where they were.  Agent Meza again asked Johnson if he is a U.S. citizen; and Johnson responded he is.  Defendant also confirmed that he is a U.S. citizen.  Agent Meza then asked Johnson if they was traveling with the car in front of them; and both Johnson and Defendant "stuttered a little bit, paused and didn't answer." (*James* Hrg. Tr. at 40.)  Agent Meza asked the question again, and Johnson and Defendant both said "yes, we are." (*James* Hrg. Tr. at 40.)  Agent Meza then referred the minivan to secondary inspection.

Agent Meza conducted a canine inspection of Fuller's vehicle.  The dog alerted to the trunk, which subsequently was found to contain three bundles of marijuana weighing approximately 50 pounds.  One bundle was in a white laundry bag; the second was in a blue laundry bag; and the third was in a duffle bag.  The duffle bag was also discovered to contain two loaded semi-automatic 9mm pistols.  Agent Meza then escorted Fuller and Campbell into the facility and advised them of their *Miranda* rights.

The three men in the minivan, Defendant, Johnson and Price, were also detained because they were traveling with Fuller and Campbell.  Border patrol agents obtained identification from the men. Defendant presented the agents with a drivers license bearing the name Matthews J. Houser and an address in Flourtown, Pennsylvania.  However, from his prints, Task Force Officer James Gimler learned that Defendant's true name was Robert Baines not Matthews Houser.  The agents also discovered that Defendant had an outstanding warrant from Pennsylvania.

Fuller and Campbell were interviewed by the agents. Campbell said Defendant paid her and Fuller $1,000 each, plus expenses, to drive with him from Pennsylvania to Arizona and back. Campbell testified that before the trip she met with Defendant, Fuller and a man called "Cuz" (later

identified as Johnson) to discuss where they were going and that they would be driving rental cars. At this meeting Campbell said they "did coke, and smoked some weed" which Defendant provided. The day they left on the trip, Campbell said she met a man called "Mooge" (later identified as Price) who also went with them.  The group drove in two separate rental cars, a tan-ish Ford 500 and a minivan.  Campbell said they first went to Phoenix where they did some shopping and spent the night. While there, Campbell said she had a telephone conversation with a man called "Felix" who gave her directions to his house in Tucson.  Campbell wrote the directions on a piece of paper.  The next day, the group drove to "Felix's" house.  After they arrived, Defendant told Campbell, Fuller and "Mooge" to "ride around for a little bit," so they left.  When they returned, Campbell saw Defendant place a blue duffle bag (later found to contain marijuana) in the truck of the car she was driving; and then he told her not to "do any stupid shit.  Obey all the traffic laws.  And don't do anything stupid." (*James* Hrg. Tr. at 15.)

Later, on July 25, 2006, TFO Gimler spoke with Mahasin Wright ("Wright"), the person who rented the car.  Wright said she rented the vehicle for her brother, Johnson.  Wright said Johnson told her he needed the vehicle to take his family on a vacation.  Wright also said Johnson had an Eddie Bauer bag.  TFO Gimler recognized the description of the bag as the one containing the guns and some of the marijuana.  Wright also told TFO Gimler that she warned her brother that Defendant was not to be near the vehicle.

On August 16, 2006, Defendant, Johnson, Fuller and Campbell were indicted and charged with conspiracy, aiding and abetting, and possession with intent to distribute less than 50 kilograms of marijuana, a Schedule 1 controlled substance, in violation of 21 U.S.C. § 841(a)(1), § 8 41(b)(1)(D), and § 846; and 18 U.S.C. § 2.

4

## II.    DISCUSSION

The government seeks to admit the following three co-conspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E):

1.    Fuller's statement to Agent Meza, in response to his question whether she and Campbell were traveling with the vehicle behind her, "that they were friends;" (*see* Supp. Br. at 5), and/or "that they were traveling with the minivan behind them." (*See James* Hrg. Tr. at 52.)

2.    Johnson's statement to Agent Meza "that they were traveling with the car in front of them." (*See* Supp. Br. at 5; *James* Hrg. Tr. at 53.)

3.    Co-conspirator "Felix's" statement to Campbell that she described as "having with the man on the telephone, whom she later identified as "Felix," with regard to directions to his house in Tucson." (*See James* Hrg. Tr. at 53.)

Defendant argues these statements are testimonial and not admissible pursuant to *Crawford*, 541 U.S. at 36, because they violate his Sixth Amendment right to confront the witnesses against him. Defendant notes that both Fuller and Campbell are expected to testify at trial. Defendant acknowledges that if Fuller testifies at trial, then there is no *Crawford* violation with respect to her statement. Defendant further concedes that Campbell may be able to testify about her conversation with "Felix" without repeating his out-of-court statements to her. (*See James* Hrg. Tr. at 54.)

### A.    CO-CONSPIRATOR STATEMENTS

Pursuant to Fed. R. Evid. 801(d)(2)(E), a statement is not considered hearsay if it is offered against a defendant and is made by a co-conspirator of the defendant during the course and in furtherance of the conspiracy. In admitting purported co-conspirator testimony under Rule 801(d)(2)(E), a district court must determine by a preponderance of the evidence that the statements

5

fall within its definition. *Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 97 L.Ed.2d

144 (1987). Rule 801(d)(2)(E) states:

> A statement is not hearsay if. . . [t]he statement is offered against a party and is. . . a
> statement by a coconspirator of a party during the course and in furtherance of the
> conspiracy. The contents of the statement shall be considered but are not alone
> sufficient to establish. . . the existence of the conspiracy and the participation therein
> of the declarant and the party against whom the statement is offered under subdivision
> (E).

At a hearing to determine the admissibility of co-conspirator statements, the court is not

bound by the rules of evidence in making its determination except those with respect to privileges.

Fed. R. Evid. 104(a); *see also Bourjaily*, 483 U.S. at 177-81 (Supreme Court made clear that Rule

104(a) governs issues of admissibility at *James* hearing). Therefore, "[i]n deciding whether the

offering party has satisfied its burden at a *James* hearing, the district court has the discretion to

consider any evidence not subject to a privilege, including both the co-conspirator statements the

government seeks to introduce at trial and any other hearsay evidence, whether or not that evidence

is admissible at trial." *United States v. Owens*, 70 F.3d 1118, 1124 (10th Cir. 1995).

The Tenth Circuit has established a three-part test for determining the admissibility of co-

conspirator statements. The trial court must find by a preponderance of the evidence that: 1) a

conspiracy existed; 2) the declarant and the defendant were both members of the conspiracy; and 3)

the statements were made in the course of and in furtherance of the conspiracy. *United States v.*

*Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996) (citing *United States v. Urena,* 27 F.3d 1487,

1490 (10th Cir.), *cert. denied*, 115 S.Ct. 455, 130 L.Ed.2d 364 (1994)); *see Owens*, 70 F.3d at 1123.

### 1.    Existence of a Conspiracy

In making its preliminary factual determination as to whether a conspiracy exists, the court

may consider the co-conspirator statement sought to be admitted as evidence of the conspiracy. *See* Fed. R. Evid. 801(d)(2)(E); *Lopez-Gutierrez*, 83 F.3d at 1242. However, the proffered co-conspirator statement alone is not sufficient to establish the existence of a conspiracy. *Id*. The government must also submit "some independent evidence linking the defendant to the conspiracy." *Id.* (citing *United States v. Martinez*, 825 F.2d 1451, 1453 (10th Cir. 1987)). Such independent evidence may be sufficient even when it is not "substantial." *Id.* (citing *United States v. Rascon*, 8 F.3d 1537, 1541 (10th Cir. 1993)); *see also Owens*, 70 F.3d at 1124-25. The Tenth Circuit has defined "independent evidence" as "evidence other than the proffered coconspirator statements themselves." *Martinez*, 825 F.2d at 1451.

In this case, in addition to the co-conspirator statements themselves, the government submitted the following evidence at the *James* hearing:

a.      Both Campbell's and Agent Meza's testimony consistent with the statement of facts set forth above.

b.      DEA Agent Eric Hansen's testimony that he inventoried the Ford 500 and the minivan and found eight disposable cameras in the car, seven of which contained photos of Fuller, Campbell and Defendant on the trip to Arizona; a Budget car rental agreement for the minivan in Johnson's name, and another rental car agreement for the Ford 500 in Wright's name; and a duffle bag identified as one which contained marijuana and two handguns. Agent Hansen also testified that TFO Gimler advised him that he contacted Wright in Pennsylvania, who identified herself as Johnson's sister, and further identified the duffle bag as belonging to Johnson.

c.      The following items found in the Ford 500: 1) approximately 50 pounds of marijuana; 2) two handguns; 3) the two laundry bags and a black duffle bag that contained the marijuana; 4) the

7

photographs of the group's trip taken from the disposable cameras; 5) the rental documents showing both the car and minivan were rented in the Philadelphia area; and that the minivan was rented to Johnson; and 6) two sets of printed computer directions to Phoenix.

Additionally, the government intends to call Fuller as witness at trial who is anticipated to testify consistently with Campbell and the facts set forth above. Therefore, based upon the totality of this evidence, the court finds the evidence is sufficient to establish the existence of a conspiracy to distribute marijuana.

**2.      Members of the Conspiracy**

Based upon the independent evidence discussed above, as well as the alleged co-conspirator statements themselves, there is sufficient evidence to find by a preponderance of the evidence that Defendant, Fuller, Johnson and "Felix" are members of the conspiracy to distribute marijuana. *See Bourjaily*, 483 U.S. at 177-81. First, the evidence shows that Defendant: organized and participated in the trip from Pennsylvania to Arizona; paid Campbell and Fuller $1,000 each to drive the rental vehicle that contained the marijuana; and met with "Felix" in Tucson and then loaded a blue laundry bag containing marijuana into the trunk of the car. Second, the evidence shows that Fuller and Johnson attended a meeting about the trip before leaving Pennsylvania; and traveled with each other as well as Defendant, Campbell, and Price from Pennsylvania to Arizona. Third, the evidence shows Fuller was paid $1,000 to drive the rental car containing the marijuana. Fourth, the evidence shows that Johnson rented the minivan in which part of the group was traveling and owned the black duffle bag in which a portion of the marijuana was found. Fifth, the evidence shows both Fuller and Johnson admitted to Agent Meza that they were traveling together. Finally, the evidence shows Campbell spoke with "Felix" on the telephone to obtain directions to his house. The next day she met

him at his house in Tucson where Defendant spoke with "Felix" and then loaded at least one of the bags containing marijuana into the trunk of the Ford 500.  The fact that "Felix" has not been indicted in this case is irrelevant to the court's determination of whether he is a co-conspirator for purposes of Rule 801(d)(2)(E) admissibility.  The Tenth Circuit has held that "[t]he co-conspirator hearsay exception contains no requirement that the declarant be a defendant, only that she be a member of the conspiracy." *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073 n.5 (10th Cir. 2006) (citing *United States v. Williams*, 989 F.2d 1061, 1067 (9th Cir. 1993)).

### 3.      During the Course and in Furtherance of the Conspiracy

The third requirement for Rule 801(d)(2)(E) admissibility has two parts.  First, the statement must be made "during the course" of the conspiracy.  Second, the statement must be made "in furtherance of the conspiracy."  "A coconspirator statement is made 'during the course' of the conspiracy if it  is made before the objectives of the conspiracy have either failed or been achieved." *Owens*, 70 F.3d at 1126 (quoting *United States v. Perez*, 989 F.2d 1574, 1579 (10th Cir. 1993) (en banc)).   A statement is "in furtherance of the conspiracy" if it is "intended to promote the conspiratorial objectives." *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986).

"When inquiring whether a statement was made in furtherance of a conspiracy, the court does not focus on its actual effect in advancing the goals of the conspiracy, but on the declarant's intent in making the statement." *United States v. Roberts*, 14 F.3d 502, 515 (10th Cir. 1993) (citation omitted).  The Tenth Circuit stated in *Perez*, "no talismanic formula exists for ascertaining whether a particular statement was intended by the declarant to further the conspiracy. . . [t]o the contrary, this determination must be made by examining the context in which the challenged statement was made." 989 F.2d at 1578-79.  The Tenth Circuit "reject[s] the 'proposition that the statements must

*actually* further the conspiracy to be admissible.  Rule 801(d)(2)(E) explicitly says statements need be 'in furtherance of the conspiracy' not that they 'further the conspiracy.'  It is enough that they are intended to promote the conspiratorial objectives." *United States v. Mayes*, 917 F.2d 457, 464 (10th Cir. 1990) (quoting *Reyes*, 798 F.2d at 384).  Nevertheless, the court is mindful that the "in furtherance" test is narrowly applied and is "a limitation on the admissibility of co-conspirators' statements that is meant to be taken seriously." *Perez*, 989 F.3d at 1578 (quotation omitted); *see Roberts*, 14 F.3d at 514.  Some examples of statements found to be "in furtherance of the conspiracy" include: 1) statements made to "prompt further action on the part of the conspirators;" 2) statements to "keep coconspirators abreast of an ongoing conspiracy's activities;" 3) statements that explain events of importance to the conspiracy; and 4) "statements of a co-conspirator identifying a fellow coconspirator." *See Roberts*, 14 F.3d at 515 (citations omitted); *United States v. Smith*, 833 F.2d 213, 219 (10th Cir. 1987) (citations omitted).  However, "mere narratives between coconspirators or narrative declarations of past events are not in furtherance of a conspiracy." *Roberts*, 14 F.3d at 514-15.

### a.     Fuller's Statement

Fuller's statement to Agent Meza that she and Campbell were traveling and friends with the individuals in the minivan was made while she was in, and attempting to pass through, the border patrol checkpoint, before the marijuana was found in the trunk of the car, and before she was arrested.  Consequently, the objectives of the conspiracy, to transport marijuana from Arizona to Pennsylvania for distribution, had not yet failed; and thus her statement was made "during the course" of the conspiracy.

Additionally, the government argues Fuller's statement was intended to further the conspiracy

because it "was made while the defendants were trying to transport the marijuana through a checkpoint without being detected." (*See* Supp. Br. at 5.) Fuller's statement did not have the effect of actually furthering the conspiracy. However, Rule 801(d)(2)(E) does not require her statement further the conspiracy. Instead, the court must look at Fuller's intent in making the statement. *See Mayes*, 917 F.2d at 464. At the time of Fuller's statement, she was attempting to get through the checkpoint without the drugs being detected as indicated by her previous statement to Agent Meza in which she lied and said they were traveling from the Grand Canyon. *See United States v. Williamson*, 53 F.3d 1500, 1520 (10th Cir. 1995) (avoiding detection by law enforcement clearly furthers conspiracy); *see also United States v. Lim*, 984 F.2d 331, 335-36 (9th Cir. 1993) (coconspirator pre-arrest statement indicating he had an innocent reason for traveling was meant to conceal conspiracy to transport drugs and was therefore admissible). Furthermore, Fuller's statement was made after Agent Meza opened and viewed generally the contents of the trunk, but before he asked for permission to conduct a canine inspection. Therefore, at that time Fuller did not have any indication that Agent Meza suspected she was transporting drugs when he asked her if she was traveling with the minivan. Fuller's response that they were traveling together could reasonably be seen as a continued effort by her to pass through the checkpoint without issue and to help the occupants of the minivan do the same. *See Lim*, *supra*. Moreover, Fuller's statement implicated Defendant and Johnson, although not by name, by identifying them as her "friends" with whom she was traveling. In this Circuit, "statements of a co-conspirator identifying a fellow coconspirator" are considered to be "in furtherance of the conspiracy." *Smith*, 833 F.2d at 219; *see also Williamson*, 53 F.3d at 1520; *United States v. Caro*, 965 F.2d 1548, 1557 (10th Cir. 1992). Therefore, in reviewing the statement itself, in addition to the independent evidence, there is sufficient evidence to

find Fuller's statement was intended to further the conspiracy. *See Roberts*, 14 F.3d at 515. Consequently, Fuller's statement satisfies the requirements for admissibility under Rule 801(d)(2)(E).

> **b.      Johnson's Statement**

Like Fuller's statement, Johnson's statement to Agent Meza that they were traveling with the car in front of them was made while he was in, and attempting to pass through, the border patrol checkpoint, before the marijuana was found in the trunk of the car, and before he was arrested. Consequently, the objectives of the conspiracy had not yet failed at the time of his statement. Therefore, the statement was made "during the course" of the conspiracy.

Additionally, the government argues Johnson's statement was an effort by him to get through the checkpoint without having the marijuana detected.  (Supp. Br. at 6.)  An examination of the evidence shows that Johnson's intent in making the statement can reasonably be considered an attempt by him to pass through the checkpoint without incident, and thus made in furtherance of the conspiracy.  The evidence shows Johnson took an active part in the conspiracy and was present when the bags containing the marijuana were loaded into the car at "Felix's" house.  Thus, it can reasonably be inferred that he knew of the presence of the drugs in the car at the time of the stop.  In an apparent effort to feign innocence and conceal the true nature of his travels, when initially questioned by Agent Meza, Johnson said he was lost and did not know where he was. *See Lim, supra.*  These statements demonstrate Johnson's intent to conceal his involvement with the drug conspiracy. *See Williamson*, 53 F.3d at 1520.  Furthermore, the evidence suggests Johnson watched Agent Meza interview Fuller and Campbell before approaching his vehicle.  Therefore, when Agent Meza asked Johnson if he was traveling with Fuller and Campbell, the question suggested that either Fuller or Campbell had already indicated to Agent Meza that the two cars were together.  Johnson's acknowledgment also appears

to be an effort to avoid giving conflicting statements to Agent Meza which would raise suspicion. Finally, Johnson's statement identifies Fuller and Campbell as being with him, and thus is made in furtherance of the conspiracy. *See Smith*, 833 F.2d at 219; *see also Caro*, 965 F.2d at 1557. Consequently, Johnson's statement satisfies the requirements for admissibility under Rule 801(d)(2)(E).

      c.      **"Felix's" Statement**

"Felix's" statement made to Campbell providing directions to his house was made on July 21, 2006, before his co-conspirators traveled to his house, and before they were stopped and arrested by border patrol. Therefore, "Felix's" statement was also made during the course of the conspiracy. *See Perez,* 989 F.2d at 1579.

Additionally, because the alleged statement gives Campbell directions to "Felix's" house where the bags containing marijuana were put in the car, the statement clearly furthers the purpose of the conspiracy by directing the defendants to the presumed location of the marijuana. *See Smith, supra* (statements to prompt further action or explain events of importance are in furtherance of conspiracy). Consequently, there is sufficient evidence to support a finding by a preponderance of the evidence, that "Felix's" statement to Campbell satisfies the requirements for admissibility under Rule 801(d)(2)(E).

      B.      **CONFRONTATION CLAUSE**

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right. . . to be confronted with the witnesses against him." Testimonial statements are the "primary object" of the Confrontation Clause. *Crawford*, 541 U.S. at 53. In *Crawford*, the Supreme Court held that when testimonial evidence is at issue, the Sixth Amendment

demands the declarant be unavailable and the defendant have had a prior opportunity for cross-examination in order for the evidence to be admissible at trial.  541 U.S. at 53-54, 68; *see also United States v. Faulkner*, 439 F.3d 1221, 1225 (10th Cir. 2006).

*Crawford* identified various formulations of "testimonial" statements, but did not adopt any specific definition; instead stating that "some statements qualify under any definition."  *Id.* at 52; *see also Davis v. Washington*, 126 S.Ct. 2266, 2273, 165 L.Ed.2d 224 (2006).  The Court noted that "[s]tatements taken by police officers in the course of interrogations are testimonial under even a narrow standard."  *Crawford*, 541 U.S. at 52.  In *Davis*, the Supreme Court revisited the issue and held that a statement is testimonial "when the circumstances objectively indicate. . . that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."  126 S.Ct. at 2273-74.  The Supreme Court uses the term "'interrogation' in its colloquial, rather than any technical legal, sense."  *Crawford*, 541 U.S. at 53 n.4.  The Court declined to adopt a specific definition of "interrogation" but found that a "statement, knowingly given in response to structured police questioning, qualifies under any conceivable definition."  *Id.*

The Tenth Circuit, analyzing *Crawford*, concluded that the "common nucleus" present in the formulations of the term "testimonial" considered by the Supreme Court "centers on the reasonable expectations of the declarant."  *United States v. Summers*, 414 F.3d 1287, 1302 (10th Cir. 2005).  The Tenth Circuit stated that "[i]t is the reasonable expectation that a statement may be later used at trial that distinguishes the flippant remark, proffered to a casual acquaintance. . . from the true testimonial statement."  *Id.* (citing *Crawford*, 541 U.S. at 51).  The court found that an "objective test focusing on the reasonable expectations of the declarant under the circumstances of the case more adequately safeguards the accused's confrontation right and more closely reflects the concerns

14

underpinning the Sixth Amendment." *Id.*   Thus, the Tenth Circuit held that "a statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime." *Id.*; *see also United States v. Townley*, 472 F.3d 1267, 1272 (10th Cir. 2007) (applying the definition of "testimonial" propounded in *Summers*).

In this case, "Felix's" statement made to Campbell during their telephone conversation is clearly not testimonial.  Consequently, it is an admissible co-conspirator statement under Rule 801(d)(2)(E).  *See Bourjaily*, 483 U.S. at 181-84; *Ramirez, infra*.  However, both Fuller's and Johnson's statements were made to Agent Meza while they were detained by him at a border patrol checkpoint.  The statements were made in response to structured police questioning by a uniformed police officer.  According to *Crawford*, these circumstances constitute a police interrogation.  *Id.* at 53 n.4.  A reasonable person in the position of Fuller and Johnson would objectively foresee that his or her statement might be used in the investigation or prosecution of a crime.  *See Summers*, 414 F.3d at 1302.  Consequently, both Fuller's and Johnson's statements are testimonial in nature and subject to the Confrontation Clause.  *Crawford*, 541 U.S. at 53; *see also United States v. Vieyra-Vazquez*, No. 05-2281, 2006 U.S.App.LEXIS 28220, at *7 (10th Cir. Nov. 13, 2006) (unpublished) (statement to border patrol agent offered to prove the truth of the matter asserted is testimonial because made in response to custodial interrogation); *United States v. Gonzalez-Marichal*, 317 F.Supp.2d 1200, 1202 (S.D. Cal. 2004) (statement by witness to border patrol agent is testimonial and not admissible under *Crawford*).

While it is clear that Fuller's and Johnson's statements are testimonial, they also satisfy the requirements for admissibility as co-conspirator statements under Rule 801(d)(2)(E) as discussed

above.  There has been considerable discussion about whether a co-conspirator statement is subject to the Confrontation Clause.  In general, courts have found that a co-conspirator statement is not testimonial, and thus not subject to the requirements for admissibility set forth in *Crawford*.  *See, e.g.*, *United States v. Heijnen*, No. CR 03-2072 JB, 2006 U.S.Dist. LEXIS 29182, at *10-13 (D.N.M. Feb. 16, 2006) (unpublished) (identifying multiple circuit cases finding a co-conspirator statement does not violate the Confrontation Clause).  However, none of these courts have addressed a case like this in which the co-conspirator statement is knowingly made in response to a police interrogation.

In *Crawford*, the Supreme Court cited a statement in furtherance of a conspiracy as a statement that by its nature is not testimonial.  541 U.S. at 56.  The Court also noted that the outcome in *Bourjaily*, 483 U.S. at 181-184, in which statements made unwittingly by a co-conspirator to an FBI informant, "did *not* make prior cross-examination an indispensable requirement." 541 U.S. at 58.  Additionally, in two recent Tenth Circuit cases, *Townley*, 472 F.3d at 1273 and *United States v. Ramirez*, ___ F.3d ___, 2007 U.S.App. LEXIS 6090, at *51-52 (10th Cir. March 16, 2007), the court found that *Crawford* did not overrule *Bourjaily* and adhered to the *Bourjaily* rule that a court need not independently inquire into the reliability of co-conspirator statements admissible under Rule 801(d)(2)(E).  However, neither of these cases concern statements made knowingly by a co-conspirator to a police officer during a custodial interrogation.

In *Townley*, the defendant cited a laundry list of alleged *Crawford* violations, including co-conspirator statements, none of which involved a police interrogation.  472 F.3d at 1274.  The Tenth Circuit found that "none of the objected-to evidence could be considered testimonial" because "[n]one of it was made at a hearing or trial or as a result of police interrogation. . . and no reasonable

16

person in the position of these declarants would have objectively foreseen that these statements would be used in the investigation or prosecution of their conspiracy." *Id.* at 1275 (citations omitted). In *Ramirez*, the defendant claimed the admission of recorded conversations between co-conspirators violated his Sixth Amendment confrontation rights. 2007 U.S.App. LEXIS 6090, at *48. The Tenth Circuit found that the statements "were not testimonial, and thus do not present Confrontation Clause problems under *Crawford*." *Id.* at *52-53. Notably, both *Townley* and *Ramirez* considered whether the statements at issue were testimonial and did not automatically deem them admissible solely on the basis of Rule 801(d)(2)(E) without also considering the *Crawford* issue. 472 F.3d at 1275; 2007 U.S.App. LEXIS 6090, at *52-53.

An examination of *Crawford* shows that the Supreme Court did not intend for its decision with respect to testimonial statements to be abrogated by a rule of evidence. While the Court cited co-conspirator statements as an example of non-testimonial evidence, its decision did not issue a mandate that *all* co-conspirator statements are to be considered non-testimonial. *Crawford*, 541 U.S. at 56. Furthermore, while *Crawford* did not overrule *Bourjaily*, it only suggested that its "outcome" kept with its traditional line. *Id.* at 58. What the Court did make clear is that testimonial statements are subject to the Confrontation Clause, whether or not such statements may also fall within a hearsay exception. Specifically, the Court said "there is scant evidence that exceptions [to the hearsay rule] were invoked to admit *testimonial* statements against the accused in a *criminal* case." *Id.* at 56. The Court explained:

> We cannot agree. . . that the fact "that a statement might be testimonial does nothing to undermine the wisdom of one of these [hearsay] exceptions." Involvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse--a fact borne out time and again throughout a history with which the Framers were keenly familiar. This consideration does not

17

> evaporate when testimony happens to fall within some broad, modern hearsay
> exception, even if that exception might be justifiable in other circumstances.

*Id.* at 56 n.7.  The Court further stated that "[l]eaving the regulation of out-of-court statements to

the law of evidence would render the Confrontation Clause powerless to prevent even the most

flagrant inquisitorial practices." *Id.* at 51.  The Court found this was not the intention of the Framers,

stating "where testimonial statements are involved, we do not think the Framers meant to leave the

Sixth Amendment's protection to the vagaries of the rules of evidence." *Id.* at 61.  Thus, the Court

made clear that hearsay exceptions do not take precedent over an individual's Sixth Amendment right

of confrontation with regard to testimonial statements. *See also Summers*, 414 F.3d at 1303 (holding

that a statement that constituted testimonial hearsay "forecloses reliance on the present sense

impression to the hearsay rule").

Therefore, while the majority of co-conspirator statements are not testimonial in nature, when

such a statement is testimonial it is subject to the requirements of the Confrontation Clause.  This

finding is consistent with *Crawford* as well as the Tenth Circuit's decision in *Summers*.  *See*

*Crawford*, 541 U.S. at 53-54; *Summers*, 414 F.3d at 1303.  Additionally, the *Bourjaily* decision does

not alter this court's determination.  While *Bourjaily* held that the "Confrontation Clause does  not

require a court to embark on an independent inquiry into the reliability of statements that satisfy the

requirements of Rule 801(d)(2)(E)," *see* 483 U.S. at 184, this decision was based in part upon the

Supreme Court's earlier decision in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597

(1980), *id.* at 182, which *Crawford* overruled.  541 U.S. at  38-69.  Moreover, *Bourjaily* concerned

non-testimonial statements and did not address the issue currently before this court.  483 U.S. at 181-

84.  To the extent that the *Crawford* decision may conflict with *Bourjaily*, this court is obligated to

follow the Supreme Court's more recent decision in *Crawford*.  Consequently, both Fuller's and Johnson's testimonial statements to Agent Meza are not admissible under Rule 801(d)(2)(E) without first satisfying the *Crawford* requirements.

**IT IS THEREFORE ORDERED THAT** Defendant's motion to exclude co-conspirator statements is **GRANTED** with respect to Co-conspirator Fuller's statement and Co-conspirator Johnson's statement; and is **DENIED** with respect to Co-conspirator "Felix's" statement.

Dated this 9th day of April, 2007.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
Richard C. Williams

Attorney for Defendant:
Mario Esparza