**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Respondent/Plaintiff,

 vs.                                       CIVIL NO. 10-131 MV/RHS
                                                CRIM. NO. 06-1797 MV

ROBERT ABDUL BAINES,

    Movant/Defendant.

**MAGISTRATE JUDGE'S FINDINGS
AND RECOMMENDED DISPOSITION**[1]

    1.    This is a proceeding on a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. Movant/Defendant Robert Abdul Baines ("Baines") attacks the judgment and sentence entered by the United States District Court for the District of New Mexico in United States v. Baines, No. CR 06-1797 MV. Baines acts in a *pro se* capacity.

**Factual and Procedural Background**

    2.    In 2006, Baines recruited two young women to travel with him and two male friends from Pennsylvania to Arizona, offering the women $1,000 each for the trip. United States v. Baines, 573 F.3d 979, 980-81 (10th Cir. 2009) (providing brief overview of underlying facts). Both women realized the purpose of the trip was to transport drugs although Baines did not provide them with

---

[1]**Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.**

details. According to subsequent trial testimony from the women, Baines told them he was "in the business," which they understood to be a reference to drug trafficking. Id.

    3.    The travelers used two rental vehicles for the trip. Upon arriving in Phoenix, the group spent the night in a motel and went shopping for awhile the next day. Baines contacted someone referred to as "Felix," and had one of the women take down directions to a place in Tucson where they would meet Felix. Id. After the group spent part of the day at a place the women assumed to be the residence of Felix, the three men left in one vehicle. Upon their return, the women were told to get ready for the return trip to Pennsylvania. They were both seated in one of the vehicles when they saw Baines carrying a blue bag to the car. The woman in the driver's seat unlatched the trunk, and both could feel things being placed in the trunk, although neither observed what was occurring in the trunk. During the return trip, Baines rode in the vehicle with two men, which followed the vehicle driven by the two women.

    4.    In July 2006, while driving through the Las Cruces, New Mexico area, the vehicles were stopped at a border checkpoint. Upon opening the trunk of the vehicle driven by the two women, agents found marijuana. Agents also learned the two vehicles were traveling together. Officers found packages of marijuana in each of three bags, two laundry bags and a black duffle bag. The black duffle bag also contained two pistols and ammunition. The two women were arrested. Id.

    5.    When it appeared the men were going to be released, one of the women told the officers about Baines' role in organizing the trip and his apparent role in acquiring and loading the marijuana. Id. at 981.

    6.    Baines was detained, at which point agents found $2,700 in cash on him. [Doc. 11 at 4, *citing* trial transcript, at pp. 68, 75-76.] All five occupants were fingerprinted. [Doc. 11, trial

transcript, at pp. 114-15.] A latent fingerprint was found on a gun magazine in the black bag, which the government established through expert testimony, was a match to Baines' fingerprint. [Doc. 11, trial transcript, at pp. 246-47; Baines, 573 F.3d at 981.]

7.     In July 2006, Mario Esparza was hired to represent Baines. Attorney Esparza represented Baines after the criminal complaint was filed against him, shortly before he was indicted, through the jury trial, held April 10-12, 2007, through the sentencing hearing on March 11, 2008, and through the perfection of the appeal. [Doc. 11, Esparza Aff. at ¶ 4, attached as Ex. 1.] Esparza withdrew on June 12, 2008, at which point, Attorney Zachary Ives was appointed for the pendency of Baines' appeal. [Id.]

8.     On August 16, 2006, a grand jury returned an indictment charging Baines and co-defendants Sharisse, Fuller, Jonna Campbell and Hassan Johnson with conspiracy and possession with intent to distribute less than 50 kilograms of marijuana. [CR Doc. 18 in Cr. No. 06-1797 MV].[2]

9.     On October 21, 2006, Attorney Esparza received a plea offer from the government which would have permitted Baines to enter a guilty plea to the original two-count indictment, resulting in a maximum period of imprisonment of not more than five years. [Doc. 11, Esparza Aff. at ¶ 5; Doc. 11, Plea Agreement, at 2, attached to Esparza Aff.] The proposed plea offer stipulated that Baines would be accountable at sentencing for 21 kilograms of marijuana, and that the government would not seek a superseding indictment that added firearm charges. [Id.] Esparza met with Baines on October 21, 2006, and explained to him the terms and benefits of the government's

---

[2]Further references herein to documents in United States v. Baines, CR 06-1797 MV will be in the format, "CR Doc. __." References to documents filed in Civ. No. 10-131 MV/RHS, the civil action under Section 2255, will be referred to as "Doc. __."

offer. Esparza also told Baines if he rejected the plea offer and proceeded to trial and was convicted, he was likely to receive a much longer sentence. [Id.]

10.     On October 25, 2006, Baines wrote Esparza a letter stating he (Baines) rejected the plea offer. Baines instructed Esparza to prepare for trial. [Doc. 11, Esparza Aff. at ¶ 6.] Baines' letter states in part:

> The government can't break me, I'm innocent and that's it, I'm not paying $25,000 for a plea I'm paying to fight hard and that's that. I have the right person to fight for me and that's you Mario that's why we hired you. And in reference to this plea bargain trash that the government tried to offer me he can trash it cause I'm not bowing down to this government, the only one that I'll continue to bow down to is the Creator of the Heavens . . . . [L]et's go to trial fighting hard giving this government all that we have you and I are not alone.

[Doc. 11, Ex. 3.]

11.     Notwithstanding Baines' instructions to reject the plea offer, as set forth in the October 25, 2006 letter from Baines, Esparza mailed Baines a copy of the formal plea offer for his continued consideration. Esparza met with Gaines again on November 3, 2006, the deadline for accepting the plea agreement. Baines told Esparza that he did not wish to accept the plea offer and intended to proceed to trial. [Doc. 11, Esparza Aff. at ¶ 6; attached letter to Baines.]

12.     Esparza declared that consistent with Rule 16-102A of the New Mexico Rules of Professional Conduct, he abided by his client's decision whether or not to accept the plea agreement. [Doc. 11, Esparza Aff. at ¶ 7.]

13.     On December 21, 2006, the grand jury returned a superseding indictment that added three firearm charges against Baines: two counts of felon in possession, and one count of carrying a firearm during and in relation to a drug trafficking crime. [CR Doc. 80.] The gun charges significantly increased Gaines' exposure to longer prison time, if found guilty of the charges.

14.     As part of trial preparation, Esparza hired a fingerprint expert witness – Mr. Darren B. Jewkes.  After Mr. Jewkes' review of the evidence, he determined that Baines' fingerprint was on one of the firearms found in the luggage at the crime scene.  Thus, the defense expert concurred with findings by the government's expert as to the fingerprints. [Doc. 11, Esparza Aff. at ¶ 8.]  In addition, Esparza declared in his affidavit that he shared Jewkes' results with Baines "in person" by hand-delivering a copy of Jewkes' report to Baines during trial preparation meetings.  During these meetings, Esparza discussed with Baines the Daubert hearing with respect to the government's fingerprint expert. [Id.; and Ex. 2, Jewkes' April 5, 2007 report.]  In his reply in support of the § 2255 petition, Baines claims that he was unaware that Esparza hired expert witness Jewkes or the results of Jewkes' analysis.  "Mr. Esparza never shared any information about a finger-print expert regarding my case to me." [Doc. 12.]

15.     After a jury trial, Baines was convicted of five counts: conspiracy to possess marijuana with intent to distribute; possession of marijuana with intent to distribute; possession of a firearm in furtherance of a drug trafficking crime; possession of a firearm after former conviction of a felony; and possession of ammunition after former conviction of a felony.  Baines, 573 F.3d at 980.  He was sentenced to a total term of 123 months of imprisonment, to be followed by three years of supervised release.  Id.

16.     Baines filed a direct appeal, in which he raised the single issue of admissibility at trial of the government's fingerprint analysis as expert testimony.  Id.  On July 20, 2009, the Tenth Circuit Court of Appeals affirmed the conviction, concluding that the district court did not abuse its discretion in allowing the government to present expert evidence that a thumb print found on some of the contraband recovered by authorities was a match to Baines' print.  Id. at 980, 992.

17.     Baines did not petition the United States Supreme Court for a writ of certiorari. [Doc. 11, p. 2.]

18.     On February 11, 2010, Baines filed this § 2255 motion that the government concedes is timely. [Doc. 2; Doc. 11, p. 2.]

19.     In the habeas motion, Baines raises two claims of ineffective assistance of trial counsel: (1) failure to investigate and obtain defendant's "own fingerprint specialist to challenge Government qualifications at the Daubert hearing," and (2) failure to inform Baines that there was no impeachment evidence to use against government witnesses and no defense at trial, which, if conveyed to Baines, purportedly would have convinced him to accept the government's plea offer. [Doc. 2, p. 4.]

## Legal Standard

### Ineffective Assistance of Counsel Claims

20.     To succeed on a claim of ineffective assistance, Baines must make a two-pronged showing: (1) "that counsel's performance fell below an objective standard of reasonableness as measured against prevailing professional norms. . ."; and (2) "that there is a reasonable probability that the outcome would have been different but for counsel's inadequate performance." Sandoval v. Ulibarri, 548 F.3d 902, 909 (10th Cir. 2008) (*citing* Strickland v. Washington, 466 U.S. 668, 688, 694 (1984), *cert. denied*, 130 S.Ct. 133 (2009)).

21.     To satisfy Strickland's first prong, Baines must identify "the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Strickland, 466 U.S. at 690. The Court also examines whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

22. To show prejudice under Strickland's second prong, Baines must demonstrate that his attorney's deficient performance prejudiced the defense, *i.e.,* that there is a reasonable probability that the outcome of the proceeding would have been different, but for counsel's deficient performance. Id. at 687

23. The reviewing court need not address both prongs if the petitioner fails to make the requisite showing for one of the two required elements; in other words, it is permissible for a reviewing court to proceed directly to the prejudice analysis, without addressing the first prong. United States v. Gonzalez, 596 F.3d 1228, 1233 (10th Cir. 2010) (*citing* Strickland, 466 U.S. at 697, 700), *cert. denied*, __ S.Ct. __, 2010 WL 2345189 (Oct. 4, 2010).

24. To prove deficient performance under Strickland, Baines must overcome the "strong presumption" that counsel's conduct was constitutionally effective. Duvall v. Reynolds, 139 F.3d 768, 777 (10th Cir.), *cert. denied*, 525 U.S. 933 (1998). Scrutiny of counsel's performance must be highly deferential and must avoid the distorting effects of hindsight. Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995), *cert. denied*, 516 U.S. 1062 (1996).

25. With respect to the second Strickland prong, the Court notes that a vague and conclusory allegation of prejudice is not sufficient to demonstrate the "actual prejudice" required for constitutional relief. In addition, "speculation ... cannot establish prejudice." United States v. Boone, 62 F.3d 323, 327 (10th Cir.), *cert. denied*, 516 U.S. 1014 (1995). *See* Stafford v. Saffle, 34 F.3d 1557, 1564-65 (10th Cir. 1994) ( conclusory and vague statements of prejudice are insufficient to demonstrate prejudice under Strickland.), *cert. denied*, 514 U.S. 1099 (1995). *See also* Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that even *pro se* plaintiffs must allege sufficient facts on which a recognized legal claim can be based, and that conclusory allegations will not suffice).

**Analysis**

I.    INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO HIRE EXPERT

26.    Baines alleges that he was denied counsel at a critical stage of the proceeding when his attorney failed to investigate and obtain his own fingerprint specialist to challenge "Government qualifications" at the Daubert hearing and that trial counsel failed to subject the prosecution's case to meaningful adversarial testing. [Doc. 2, p. 4.]

27.    Baines is mistaken.  Esparza provided affidavit testimony that he retained a certified latent fingerprint examiner as an expert witness in preparation for Baines' trial.  [Doc. 11, Esparza Aff. at ¶ 8.] However, the defense expert's analysis was consistent with the government's expert's results, thereby providing further confirmation that Baines' fingerprint matched the latent print found on one of the firearms at issue.  The defense expert supplied a written report, dated April 5, 2007, setting forth the expert's analysis, review and conclusion. [Doc. 11, Ex. 2.] Esparza testified that he hand-delivered the defense expert's report to Baines before trial. [Doc. 11, Esparza Aff. at ¶ 8.]

28.    Baines' reply provides unconvincing, self-serving testimony that he was unaware that his attorney hired a fingerprint expert and that he did not know of the defense expert's results. [Doc. 12.] Baines inappropriately accuses trial counsel of "manufacturing" the defense expert's report of his fingerprint analysis to avoid a claim of ineffective assistance of counsel.  This argument is unfounded since the defense expert's report contains a date that predates Baines' trial.  Esparza would not have expended resources before trial on an expert merely to later avoid an ineffective assistance of counsel claim that he could not have foreseen at that point.  Moreover, Esparza is an officer of the court, and there is no reason to disbelieve his detailed sworn affidavit testimony that is consistent with the expert's written report.

29.     Thus, the Court concludes that Esparza conducted an appropriate investigation into possible challenges to the government's expert's identification of Baines' fingerprint, including the retention of an expert to attempt to challenge that expert evidence. In addition, Esparza filed a motion for a <u>Daubert</u> hearing on the government's fingerprint experts and cross-examined the government witnesses at the hearing. Esparza's motion to exclude the government's expert evidence was unsuccessful and his challenges to the government's expert evidence failed, but through no fault of Esparza. The record demonstrates that he vigorously defended Baines. [CR Doc. 175, 189.]

30.     Because there is no evidence of deficient performance by Esparza as to the retention of a fingerprinting expert, Baines fails to carry his "heavy burden" to show that trial counsel's performance fell below an objective level of reasonableness. Moreover, even if Baines could show deficient performance by Esparza, there was no prejudice, nor did Baines allege any prejudice. The defense expert's results confirmed those of the government's expert. Thus, Baines did not demonstrate how expert testimony would have altered the outcome of trial, other than to provide further evidence in support of the government's case. Under these circumstances, there was nothing to gain by retaining the defense expert.

31.     For the above-stated reasons, the Court concludes Baines showed neither constitutionally deficient performance by Esparza or prejudice.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO ADVISE BAINES ABOUT THE WEAKNESS OF HIS CASE

32.     Gaines claims that if Esparza had told him they had no evidence to impeach the government and essentially no defense to the charges, Gaines would have accepted the plea offer rather than having proceeded to trial. [Doc. 2, p. 4.] In light of the record, Gaines' argument is unpersuasive.

33.     First, Esparza utilized ample impeachment evidence at trial. The trial transcripts confirm that Esparza cross-examined the government's two cooperating witnesses at trial by attacking their credibility and eliciting testimony from them about prior criminal behavior and prior instances of drug abuse. Esparza brought out testimony by the cooperating witnesses that they knowingly participated in a drug transportation conspiracy, provided prior lies and inconsistent statements, and further agreed to testify at trial in exchange for reduced sentences. Esparza also attacked the credibility of law enforcement officers when possible. [CR Doc. Nos. 175, 189.] Thus, Esparza could not have truthfully told Baines he had no impeachment evidence, because Esparza ably used such evidence.

34.     In addition, Baines had a defense to the charges, *albeit* unsuccessful. In his October 25, 2006 letter to Esparza, Baines was adamant in proclaiming and maintaining his innocence, "and that's that." [Doc. 11, Ex. 3, p. 1.] With respect to the plea offer, Baines characterized it as "trash" and further told Esparza that the government could "trash it cause I'm not bowing down to this government . . . ." [Id., p. 2.]

35.     Esparza presented this very defense at trial – actual innocence. He opened by arguing the travel to Arizona with the co-conspirators was a "nightmare" for Baines and that Baines was surprised by this conspiracy. [CR Doc. 175, pp. 24-25.] In closing, Esparza continued with the theme of innocence. He argued that Baines did not own the suitcase with weapons and that the clothing in that bag did not belong to Baines. He asked the jury to find Esparza not guilty of all five charges. [CR Doc. 189, pp. 384-85.] Thus, Esparza would not have told Baines that he had no defense because Esparza presented the defense Baines requested.

36.     In order to be found constitutionally ineffective, trial counsel's performance must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible

10

defense strategy. Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir.), *cert. denied,* 522 U.S. 844 (1997). Baines did not demonstrate that Esparza's representation of him was "completely unreasonable" or even "wrong." To the extent that Baines might argue he was entitled to better or perfect representation, this is not true. A defendant is not entitled to perfect or error-free representation. Washington v. Watkins, 655 F.2d 1346, 1357 (5th Cir. 1981), *cert. denied*, 456 U.S. 949 (1982); United States v. Rhoads, 617 F.2d 1313, 1319 (8th Cir. 1980); Martinez v. U.S., 2008 WL 2329171, *5 (D. Utah June 3, 2008) (unpublished).

   37. With regard to Baines' claim that he would have accepted the plea offer, but for Baines' lack of advice regarding the strength of his defense, all evidence is to the contrary. On three separate occasions, Esparza discussed or presented the plea offer to Baines. On two occasions, Esparza met with Baines about the plea offer and explained the consequences of accepting the offer as opposed to proceeding to trial where he risked more jail time, if convicted. [Doc. 11, Esparza Aff., ¶ 6.] Baines insisted he was innocent and that Esparza was the attorney to defend him at trial. [Doc. 11, Ex. 3.]

   38. In addition, Baines did not demonstrate prejudice. Stated differently, he did not make the requisite Strickland showing that but for Esparza's ineffective assistance, he would have pled guilty. *See* United States v. Carter, 130 F.3d 1432, 1442 (10th Cir.1997) (in collateral attack upon trial counsel's advice regarding accepting plea offer, Strickland's prejudice prong requires "there must be a reasonable probability that but for incompetent counsel a defendant would have accepted the plea offer and pleaded guilty.") (*citing* Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Here, Baines did not show in the first instance that his attorney provided incompetent representation when Esparza supplied him with the plea offer information and consequences on two to three occasions. Second, there is no evidence, other than Baines' hindsight and self-serving testimony, that he would

have accepted the plea offer at any point. This is particularly true in view of Baines' steadfast denial of guilt and characterization of the plea offer as "trash."

39.     For the above-stated reasons, the Court concludes Baines showed neither constitutionally deficient performance by Esparza or prejudice.

### **Recommended Disposition**

That Defendant/Movant Robert Abdul Baines' Motion to Vacate, Set Aside, or Correct Sentence [Doc. 2] be denied and the case be dismissed with prejudice.

*Robert Hayes Scott*
ROBERT H. SCOTT
UNITED STATES MAGISTRATE JUDGE